IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOE BEASLEY, et. al, | |
| Plaintiffs, | Case No.: |
| v. | 11-CV-03801-AJB |
| CITY OF ATLANTA, | |
| Defendant. | |

## SECOND AMENDED COMPLAINT

**COME NOW** Plaintiffs in the above-styled action and file this Second Amended Complaint pursuant to this Court's Order of February 1, 2012 [Doc. 32].

## I. JURISDICTION AND VENUE

1. Plaintiffs, in bringing an action to redress the deprivation of constitutionally protected rights under the First Amendment of the United States Constitution, assert claims presenting a federal question under 42 U.S.C. § 1983. Jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b) because all actions complained of occurred within the boundaries of this judicial district and all parties have their primary place of business with this

district or reside in such.

## II. PARTIES

3. Plaintiff **Joe Beasley** is a military veteran and civil rights leader. He is human resources director at the Antioch Baptist Church, president of the Joe Beasley Foundation, and the southern regional director of the Rainbow/PUSH coalition. His humanitarian efforts extend across national borders and he actively worked to end apartheid in South Africa, to free Nelson Mandela, to provide healthcare and educational facilities in Haiti and to provide medical supplies to numerous impoverished countries. He participated in the Occupy Atlanta protests and who was arrested at the protests on October 26, 2011. He participated in the protests as part of his ongoing efforts to end oppression of all kinds and plans to protest again in Woodruff Park on November 5.

4. Plaintiff **Vincent Fort** is a state senator for Fulton County's 39th District. In his role as state senator, he has actively worked to end predatory lending, discrimination against persons with disabilities, and racial profiling. He has been recognized and honored by organizations such as the NAACP, the AARP, the National Association of Consumer Advocates, and the Anti-Defamation League. He has participated in the Occupy Atlanta protests several times each week and was arrested at the protests on October 26, 2011. He plans to protest

again in Woodruff Park on November 5.

5. **Liliana Bakhtiara**, **Jason Woody**, **Melvin Smith**, and **Joe Diaz** are protesters who have joined others in Occupy Atlanta. Each is a resident of Georgia and over eighteen years of age. Each has participated in the Occupy Atlanta protests and each plans to protest again in Woodruff Park on 5 November 2011.

6. Plaintiff **Occupy Atlanta** is an unincorporated organization consisting of individuals who voluntarily join to voice their disagreement with governmental policies that create ongoing political and social disenfranchisement of the American populace, to combat inequitable concentrations of power and wealth, and to enact policies and laws based upon the fundamental principle of absolute respect for all people.

7. Defendant **City of Atlanta** ("the City") is a municipal corporation incorporated under the laws of the State of Georgia. Pursuant to OCGA § 9-11-4, service upon the City may be perfected by serving Mayor Kasim Reed at Atlanta City Hall located at 55 Trinity Avenue SW, Atlanta, Georgia 30303.

### III. FACTS GIVING RISE TO PLAINTIFFS' CLAIMS

*Background of the Occupy movement*

8. On 17 September 2011, a movement now known as "Occupy Wall Street" began in New York City. The goal of the movement was to protest and end

growing wealth disparity in the United States, the disenfranchisement of the poor and middle class, and to combat systemic discrimination based upon race, sex, gender, class, nationality, and sexual orientation. The Occupy Wall Street movement garnered international attention and similar protests have begun in various cities across the United States and the world.

9. Occupy Atlanta is a direct outgrowth of the Occupy Wall Street movement and adheres to the same principles and political message. The purpose of Occupy Atlanta is to voice political concerns, to provide an avenue of political speech, and to encourage political participation and awareness by its members and the general public.

10. Occupy Atlanta is committed to peaceful and responsible political protests. Occupy Atlanta does not condone or tolerate any form of violence, discrimination, waste, or public nuisance.

11. Occupy Atlanta leaders have stated publicly that violence and law breaking will not be permitted, and several members of the organization have been charged with the task of ensuring that the protests remain peaceful and lawful.

12. Occupy Atlanta is governed by a General Assembly which is driven by consensus decision-making. There is no single representative with decision-making authority, and all decisions are made pursuant to established

procedures.

13. The groups within the "Occupy" movement, including Occupy Atlanta, give voice to their speech by maintaining a 24-hour presence on a specific public property and by engaging in protected speech and assembly during that time. This style of protest and assembly have garnered international attention and spurred political discourse throughout the county.

14. The use of 24-hour protests is one of the fundamental and distinguishing characteristics of the Occupy movement. Without such protests, individuals associated with the movement will be deprived of the most effective means of assembling and communicating their political message.

*Occupy Atlanta in Woodruff Park*

15. On 6 October 2011, individuals associated with Occupy Atlanta began protests in Woodruff Park ("Woodruff Park"), located on the corner of Peachtree Street and Edgewood Avenue in the City of Atlanta.

16. Woodruff Park is centrally located in downtown Atlanta and is accessible by both bus and train. The Park is blocks away from Georgia State University and during the day is thriving with students and business workers. Woodruff Park is also within walking distance of the Georgia Capitol building.

17. The protests began with only a few individuals and quickly grew. The protests

were focused on voicing political concerns, advancing the political causes of the Occupy movement and, at all times, focused on providing an avenue for the free expression of political ideas and a common point of assembly for interested citizens.

18. Each night, a number of individuals remained in Woodruff Park overnight to maintain the protests. Those who remained in Woodruff Park maintained a quiet presence and did not disrupt any nearby road, thoroughfare, business, apartment, or public facility. Activities continued through the night and individuals assembled to participate in the free expression of ideas.

19. Through the course of the protests, the Occupy Atlanta members formed various committees to help citizens become involved in the protests and political process. These committees were divided into Media, Writing/Press, Logistics, Food, Coordinating, Medical Safety, Child Care, Legal, Welcome and Orientation, Anti-racism, Outreach, Photography and Videography, Arts and Literature, and Information Technology.

*Atlanta Regulation on the Use of Public Parks*

20. The City of Atlanta Code of Ordinances ("the code") creates three classes of permits governing gatherings of individuals: large gathering permits; festival permits; and assembly permits. No permit is required for a gathering of less

than 75 people.[1]

21. Section 110-60(a) of the code prohibits any person from occupying a public park from the hours of 11:00 p.m. until 6:00 a.m. Section 110-60(a) exempts situations where "the person has a festival or assembly permit for consecutive days and is performing duties not possible during the normal festival or assembly hours."[2]

22. Section 110-60 also creates an exemption to the park closure law for the Chastain Park amphitheater: "hours for use of the Chastain Park amphitheater are extended until 1:00 a.m. on nights when performances are being given in the Chastain Park amphitheater[.]"

23. No matter what permit is held, it is impossible for Occupy Atlanta to engage in any *speech-related* activity in any of Atlanta's public parks between the hours of 11:00 p.m. and 6:00 a.m. or to maintain a continuous vigil or presence.

*Atlanta Mayor Kasim Reed allows the protests to continue*

24. Pursuant to the Atlanta Code of Ordinances, the Mayor of Atlanta has the power to "issue executive orders which may apply to events of short duration, including, but not limited to, the temporary exercise of extraordinary police power in times of emergency, such actino to expire at the next meeting of the

---

1  Exhibit A, Large and small gatherings; Exhibit , Definitions and clarifications related to assemblies
2  Exhibit C, Use of public parks at night

council subsequent to the issuance thereof unless ratified by a majority of the council present and voting."[3]

25. On 10 October 2011, Atlanta Mayor Kasim Reed spoke favorably of Occupy Atlanta. Thereafter, Mayor Reed issued an executive order which stayed the enforcement of Atlanta City Code Section 110-60.[4]

26. This executive order gave permission to the protesters to remain in Woodruff Park and to continue their political assembly without fear of police intervention for violating the park closing hours.

27. On 17 October 2011, Mayor Reed extended the executive order and stated that the Occupy Atlanta protesters could remain in Woodruff Park until 7 November 2011.[5]

28. This executive order did not include any specific terms limiting its revocation, and did not confine the Mayor's judgment or discretion to revoke the executive order.

29. In spite of the condonation of the protests by the Mayor, City of Atlanta police maintained a presence surrounding the Occupy Atlanta movement.

30. Prior to the mass arrests of Occupy Atlanta protesters, no person associated

---

[3] Exhibit D, Powers of the Mayor
[4] Exhibit E, Executive Order 2011-2
[5] Exhibit F, Executive Order 2011-3

with Occupy Atlanta was arrested for any other violation related to the political protests taking place in Woodruff Park.

31. On October 25, the Mayor revoked the executive order granting permission to Occupy Atlanta to remain in Woodruff Park.[6]

*Arrests in Woodruff Park*

32. On 25 October 2011, City of Atlanta police announced their intention to arrest any person who remained in Woodruff Park past 11:00 p.m.[7]

33. To prepare for the arrests, City police erected barricades around the perimeter of Woodruff Park. Between 200 and 300 uniformed Atlanta police officers were involved in the effort to evict all individuals from Woodruff Park.

34. Police arrested approximately fifty-two peaceful individuals. Additionally, police removed all personal possessions of the protesters and threatened to arrest any individual who re-entered Woodruff Park.

35. Woodruff Park remained closed, surrounded by barricades and a heavy police presence, through Thursday, October 27.

36. All Occupy Atlanta protesters who were arrested on October 26 were charged with violating City Code Section 110-60(a).

37. The Occupy Atlanta protesters were not charged with violating any other law

---

6  Exhibit G, Executive Order 2011-4
7  Exhibit H, Press release announcing arrests

of the State of Georgia or City of Atlanta by peacefully assembling in Woodruff Park.

*Second Round of Protests*

**38.** After the October 26 arrests, Occupy Atlanta announced its intent to resume protests in Woodruff Park on November 5.

**39.** On the evening of November 5, numerous protesters gathered in Woodruff Park. Protesters erected tents and signs and were engaged in symbolic expression and free speech.

**40.** At approximately 11:00 p.m., the protesters left the park and moved to the surrounding sidewalks.

**41.** Police in riot gear paraded up and down Peachtree Street and closed numerous side streets. The vast majority protesters remained on the sidewalks, and the police arrested protesters who stepped onto the street or for other technical violations of the law.

**42.** There were a total of twenty arrests, in spite of the fact that the protesters left the park at 11:00 p.m. and engaged in protest on the sidewalks surrounding the park.

**43.** The congregation and protests on the sidewalks was short-lived, and by 2 a.m. the protesters dispersed.

44. On November 6, a single protester entered Woodruff Park and sit in silent protest.[8]

45. That protester was arrested by Atlanta police for remaining in a public park after 11:00 p.m.

*Allegations Common to all Counts*

46. Occupy Atlanta is engaged in expressive conduct and speech protected by the First Amendment.

47. Beyond Plaintiffs' protests, a wide-array of protected First Amendment activity occurs between the hours of 11:00 p.m. and 6:00 a.m. These include pro-life rallies, support for veterans groups, peace rallies, prayer vigils, silent protests, political rallies, September 11th memorials, early morning workout classes, group yoga and meditation classes, and other sit-ins and multi-day protests and gatherings. Each these activities are banned in public parks in Atlanta during the hours that are often most central to expressing the unique message of each type of gathering.[9]

48. There are at least 343 public parks within the City.[10]

49. There are other public parks in Atlanta that are not listed on Exhibit K, and

---

8   Exhibit I, Photo of single protester
9   Exhibit J, Examples of other protests, gatherings, and assemblies
10  Exhibit K, List of public parks

Exhibit K comprises only a partial list of all parks.

50. Each of these parks are subject to § 110-60(a), except for Chastain Park which has extended closing time of 1:00 a.m. on certain nights.[11]

51. There is no permit that will allow any person or group of people to engage in protected speech or expression in any public park between the hours of 11:00 p.m. and 6:00 a.m.

52. Many public parks in Atlanta consist largely of concrete sidewalks and are not covered by grass.

53. Many public parks in Atlanta are open to view from all sides and any activity taking place therein can be seen from any nearby street or sidewalk.

54. Sidewalks are subject to numerous regulations regarding the size of an assembly, erecting tents or other structures, and signs.

55. Erecting certain signs on a public right-of-way is prohibited unless a permit is obtained.[12]

56. Camping, sleeping, and storing personal property in a single place prohibited on any sidewalk, street, park, plaza, attraction, monument, bench, parking lot, or median. There is no exception for camping or sleeping as an expression of

---

11  Exhibit C, Use of Public Parks at Night
12  Exhibit L, Encroachments

symbolic conduct.[13]

57. Protests and pickets are prohibited at or near individual residences.[14]

58. Any assembly or gathering on a sidewalk that might block pedestrian traffic is prohibited.[15]

59. The City of Atlanta also prohibits any gathering near and detention facility, jail, or courthouse or "other city-owned property in violation of the rules and policies of the facility[.]"[16]

60. Public parks are the most easily accessible public forum in Atlanta and the only traditional public forum that would be conducive to protest and group meetings.

61. The right to engage in First Amendment activity includes the right to engage in public protest and assembly between the hours of 11:00 p.m. and 6:00 a.m.

### Count I
### Violation of 42 U.S.C. § 1983
*Section 110-60 is an impermissible time, place, and manner restriction on it face and as applied to Occupy Atlanta*

62. Plaintiffs incorporate all previous allegations as if set forth herein.

63. Section 110-60 is unconstitutional because it is not content-neutral. It targets

---

13 Exhibit M, Urban Camping
14 Exhibit N, Residential Picketing
15 Exhibit O, Disorderly Conduct
16 Exhibit P, Gathering near detention facility, jail or courthouse

certain forms speech by restricting the right of any person to engage in speech during certain hours while allowing large commercial festivals to perform duties that support commercial speech during daytime hours and allowing commercial performances at the Chastain Park amphitheater.

**64.** Section 110-60 is not narrowly tailored to the City's goal of maintaining public parks because it does not provide a permit scheme for citizens to engage in legitimate after-hours use of public parks for protected speech and assembly.

**65.** Section 110-60 does not leave open alternative channels of communication or assembly between the hours of 11:00 p.m. and 6:00 a.m. because no other public forum exists in the City to provide a meaningful location for citizens to congregate and engage in protected speech and assembly and no other forum exists that allows Occupy Atlanta to effectively communicate its intended message.

<u>**Count II**</u>
<u>**Violation of 42 U.S.C. § 1983**</u>
*Section 110-60 is unconstitutionally overbroad*

**66.** Plaintiffs incorporate all previous allegations as if set forth herein.

**67.** Section 110-60 is unconstitutionally overbroad because it bans any individual or group from entering a public park after 11:00 p.m. for the purposes of engaging in protected speech and assembly.

**68.** Section 110-60 targets substantially more speech than necessary to advance any City goals.

**69.** Section 110-60 targets speech without regard to whether that speech has any deleterious effect on the surrounding community or any other negative secondary effects.

**Count III**
**Violation of 42 U.S.C. § 1983**

*Ability of the Mayor to suspend enforcement of Section 110-60 to allow for after-hours speech and protest constitutes an unlawful prior restraint*

**70.** Plaintiffs incorporate all previous allegations as if set forth herein.

**71.** The executive order issued by Mayor Reed on 17 October 2011 granted Occupy Atlanta permission to remain in Woodruff Park until 7 November 2011.

**72.** This executive order constituted a permit to engage in constitutionally protected speech.

**73.** If a permit to engage in protected speech is issued, it cannot be revoked unless the discretion of city officials is controlled by defined standards.

**74.** Mayor Reed's decision to revoke Occupy Atlanta's previously-granted permission to remain in Woodruff Park was the product of arbitrary decision making because it was not confined by any standards or safeguards.

**75.** Mayor Reed's decision to revoke Occupy Atlanta's permission to remain in

Woodruff Park was the product of unfettered discretion vested in a single city official.

## V. REQUEST FOR RELIEF

**76.** Plaintiffs request this Court declare that Section 110-60 is unconstitutional, both facially and as applied, under the First Amendment of the United States Constitution.

**77.** Plaintiffs request this Court issue an injunction suspending the enforcement of Section 110-60 until such a time as the City enacts a constitutional permitting scheme to allow legitimate use of public parks for protected speech.

**78.** Plaintiffs request this Court find the revocation of Mayor Reed's permission to operate was the product of arbitrary and unconstitutional decision-making and issue a mandatory injunction allowing Occupy Atlanta to remain in Woodruff Park for a period commensurate with the original executive order.

**79.** Plaintiffs request an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**80.** Plaintiffs request that, on any issues so triable, there by a trial by jury.

Respectfully submitted this 8th day of February, 2012.

| /s/Jeffrey R. Filipovits | /s/Ralph S. Goldberg |
|---|---|
| Jeffrey R. Filipovits | Ralph S. Goldberg |
| Georgia Bar No. 825553 | Georgia Bar No. 299475 |
| FILIPOVITS LAW FIRM, P.C. | GOLDBERG & CUVILLIER, P.C. |
| 2900 Chamblee-Tucker Road | 755 Commerce Drive |

| | |
|---|---|
| Building 1 | Suite 600 |
| Atlanta, Georgia 30341 | Decatur, Georgia 30030 |
| Phone: 770-455-1350 | Phone: 404-378-7700 |
| Fax: 770-455-1449 | Fax: 404-378-7708 |

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the forefoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

This 8th day of February, 2012.

/s/ Jeffrey R. Filipovits
Jeffrey R. Filipovits

## CERTIFICATE OF SERVICE

I hereby certify that this Response to Defendant's Motion to dismiss has been served upon the following attorneys through the CM/ECF system which will automatically generate notice of the filing.

>Laura Burton
>Department of Law
>68 Mitchell Street
>Suite 4100
>Atlanta, Georgia 30303

This 8th day of February, 2012.

>/s/ Jeffrey R. Filipovits
>Jeffrey R. Filipovits